SMITH *against* DOWNS :

IN ERROR.

An honourary obligation, without a legal interest, does not render a witness incompetent.

This was an action of *assumpsit,* brought by *Downs* against *Smith,* for the price of a pair of oxen.

On the trial of the cause, in the county court, on the general issue, the defendant offered *Nathaniel B. Smith,* as a witness, to testify, that the cattle mentioned in the declaration had been paid for, by the defendant ; it being agreed, by the parties, that such payment, if made, should be a defence under the general issue. The plaintiff enquired of the witness, whether he did not consider himself under an honourary obligation to pay the judgment, or some part of it, if the plaintiff should recover one against the defendant ; to which he answered, that he was not legally bound to pay any thing ; but that he considered himself under an honourary obligation to pay some part of the judgment, in case a recovery should be had ; but how much he was bound in honour to pay, he had not then determined.— The plaintiff thereupon objected to the competency of the

*Litchfield,*
June,
1827.

Smith
*v.*
Downs.

witness; and the court excluded him. After a verdict for the plaintiff, the defendant, having filed a bill of exceptions, brought a writ of error; and the superior court affirmed the judgment of the county court. To revise these decisions, the present writ of error was brought.

*N. B. Benedict* and *T. Smith*, for the plaintiff in error, contended, That a mere honourary obligation does not render a witness incompetent. This results, first, from the general principle, that no interest, except a legal, certain and immediate one in the event of the suit, is sufficient to disqualify a witness. 2 *Stark. Evid.* 744. & seq. The interest in question, if it may be called an interest, is exceedingly uncertain and capricious, varying in different persons, and in the same person at different times. Secondly, it is susceptible of great abuse, as a reluctant witness may, at pleasure, deprive the party of his testimony, by pretending a sense of honour. Thirdly, it makes the disqualification irremoveable, as a release cannot touch it.— Fourthly, it is absurd in its operation, as it excludes men who have the nicest honour and integrity, while it admits those who are destitute of both. *Pederson* v. *Stoffles,* 1 *Campb.* 144.

In *Skillinger* v, *Bolt,* 1 *Conn. Rep,* 147. the present question was not presented by the facts in the case. The witness was under a *legal* obligation to indemnify the party; and his competency was not restored, by the release, which the Court treated as a nullity. *Swift's Evid.* 63. In this light the case cited has been viewed, by judges on the circuit, who have held a mere honourary obligation to be no disqualification. Per *Bristol,* J. in *Gorham* v. *McIlhenney, New-Haven* county, *August* term, 1821: *and per Chapman,* J., in an anonymous case, in *New-Haven* coun v, *January* term, 1825.

*C. B. Phelps,* for the defendant in error, after remarking that the object of all rules of evidence, is to promote justice, by means of *impartial* testimony. and that consequently, every objection to the competency of a witness, is directed against his *bias;* contended, that a witness, who, by his own declaration, furnishes as strong evidence of bias as can be inferred from a *legal interest,* ought, upon the same principle, to be excluded; and the courts in *England* and in this country, have decided accordingly. *Frotheringham* v. *Greenwood,* 1 *Stra.* 12.. *Peake's Evid.* 157. *Swift's Evid.* 55. *Skillenger* v. *Bolt,* 1 *Conn. Rep.*

147.  In the latter case, the precise point was decided by this Court.  The decision proceeds on the ground of *bias.*  There are no facts in that case, shewing any *fraud* between the witness and the party who offered him.  After the execution of the release, the witness was asked, if he did not expect to pay the judgment, if one should be recovered against the defendants.  To which he replied, "I certainly do."  For this, and this alone, he was excluded, by the superior court, consisting of *Reeve,* Ch. J. and *Edmond,* J. ; and this Court unanimously decided, that the superior court "did right in excluding the witness."  Besides, if there were fraud in obtaining a release, it would still be good *inter partes.*  They could not allege fraud to defeat its operation.

The only case in *England,* where the rule now contended for, has been departed from, is the *Nisi Prius* case of *Pederson* v. *Stoffles,* 1 *Campb.* 144.  The reason suggested for that decision, has more of sententiousness in it, than sound logic.  It might be applied, with equal propriety, to a legally interested witness, provided he considered himself bound in honour, notwithstanding his interest, to speak the truth.

It has been repeatedly decided, both in *England* and in this country, that a person who expects a benefit from the event of the suit, or believes himself legally interested, is an incompetent witness.  5 *Rob. Adm. Rep.* 307. n. *Amer.* ed.  The rule there laid down, is, that if the witness thinks himself entitled in law, he acts under an impression of interest, which renders him incompetent, however erroneous that opinion may be.  To the same effect are the following *American* cases.  *Plumb* v. *Whiting,* 4 *Mass. Rep.* 518.  *Lansingburgh* v. *Willard,* 8 *Johns. Rep.* 428.  *Richardson's* exr. v. *Hunt,* 2 *Munf.* 148.  *Sentney* & al. v. *Overton* & al. 4 *Bibb* 445.  *McVeaugh* v. *Goods,* 1 *Dall.* 62.  *Innis* v. *Miller,* 2 *Dall.* 50.

HOSMER, Ch. J.  Whether an honourary obligation is an objection to the competency of a witness, is the question to be decided.

It is a rule uniformly established, that an interested witness is incompetent to give testimony : but what the criterion is, by which such interest shall be tested, has been the subject of no little controversy.  The former cases on this point are irreconcileable, and were decided on very narrow grounds; and until the determination of *Bent* v. *Baker,* 3 *Term Rep.* 27., as

*Litchfield,*
June,
1827.

Smith
*v.*
Downs.

late as the year 1789, it was generally held, in *Westminster-Hall*, that an interest in the question put to a witness, rendered him incompetent. In the case just cited, it was adjudged, that to exclude a person from giving testimony, he must be interested in the *event* of the suit. More accurately expressed, it must be "some legal, certain and immediate interest in the result of a cause, or in the record as an instrument of evidence." Such is the *English* law.

In this state, until the year 1804, an interest in the question of fact on trial, went to the competency of the witness. Then arose the case of *Phelps* v. *Winchel*, 1 *Day* 269. And on a deliberate review of the subject, it was determined, that an interest in the event of the suit alone, rendered a witness incompetent. The reasons assigned in this case, given by the late Ch. J. *Ellsworth*, draw the line of distinction between that which goes to the credibility of a witness and that which affects his competency, in a more lucid and perspicuous manner, than any which have fallen under my observation. "The common law," said he, "recognises but one description of interest; that is, an interest in the event of the suit. Merely an interest in the question, as it is called,—his having, or being likely to have, a suit, which may turn on the same point,—is not, in legal estimation, *an interest*. It is a *bias* affecting his credit, but not his competency. So is the law understood, by the courts at *Westminster*. Precedents to the contrary, which misled them, for a time, as they have the courts in this state, have been found, on examination, to be departures from the law. It was never, indeed, admitted in principle, that bias without interest went to the competency of a witness; nor could it be, without rendering the rule of admission too uncertain for practice, and too limited for the investigation of truth. The error, that crept into practice, was, that of mistaking, in certain cases, bias for interest."

The same error misled the county court, in the case under discussion; the bias arising from a supposed honourary obligation having been taken for an interest in the event of the suit. This interest occurs when there is a certain benefit or disadvantage to the witness attending the determination of the cause one way, as contradistinguished from mere prejudice or bias, arising from relationship, friendship, or any other of the numerous motives, by which a witness may be influenced. *Gilb. Evid.* 106, 7. *Bull. N. P.* 284. A legal or fixed interest in the

event, exists, when the record operates, by its own proper force, to produce it; but there is a bias, when the judgment has an impulse, in some manner, on the mind of the witness, and exerts a species of moral force, while the record has no legal effect. Many witnesses have been admitted to testify, who, from their situation and state of mind, were under the most powerful bias. Such have been heirs apparent giving testimony for their ancestors, to preserve the estate, which, if not conveyed away, would descend to them; such in general are all witnesses interested in the question; and such are persons who entertain high expectations of important benefit, as the result of their testimony. 1 *Phill. Evid.* 37, 8. 2 *Stark. Evid.* 744.

In *M. C. Rudd's* case, *Leach's Cro. Ca.* 135. (*Dub.* ed.) *Henriette Alice Perreau*, the wife of *Robert Perreau*, who was then under sentence of death, was offered as a witness against the prisoner, and being interrogated, she declared, that if Mrs. *Rudd* was found guilty, she supposed it would be the means of procuring Mr. *Perreau's* pardon. The case was elaborately argued, by the counsel on each side; but the court were of opinion, that it was not an objection that went to the competency of the witness, though it would go strongly to her credit:

The doctrine advanced in *Phelps* v. *Winchel*, that "it was never admitted *in principle*, that *bias* without interest went to the competency of a witness," might, with legal truth, have been expressed more emphatically, that such was not the principle even in cases of the strongest bias.

An honourary obligation resulting from a decision, is no interest in the event; as such judgment does not legally operate against the witness, either directly, or as evidence. It is a bias only; and except where a principle of honour glows, as it does in the breasts of a comparatively few, its operation is feeble, uncertain and capricious. How faint is the impression it makes, when compared with the enumerated instances of powerful bias, which have been held to work no incompetency!

The decisions on the question, whether an honourary obligation disqualifies from testifying, have negatived the supposition. It is admitted, that *Fotheringham* v. *Greenwood*, 1 *Stra.* 129. was decided differently. It was said, by *Pratt*, Ch. J., *obiter*, that if a witness *thinks* himself interested, it is a bias upon him; and it had been before ruled, by Ch. J. *Parker*, that a person under an honourary obligation to indemnify the party producing him, was not a competent witness. These decisions

*Litchfield,*
*June,*
1827.

Smith
*v.*
Downs.

*Litchfield,*
*June,*
*1827.*

Smith
*v.*
Downs.

have been often referred to, without due attention to the legal doctrine on the subject of interest, when they were determined. They were made more than a century since, before the law confining incompetency to an interest in the event of the suit, was established; and the reason given for the exclusion of the witness, in *Fotheringham* v. *Greenwood*, was, that he who thinks himself interested, although in truth he has no interest, is under a *bias,*

In a recent decision of Sir *James Mansfield*, Ch. J., in *Pederson* v. *Stoffles*, 1 *Campb.* 144. it was determined, that an honourary obligation, which will be affected, by the event of a cause, is no objection to the competency of a witness. By this determination, made since an interest in the event of a suit, was adjudged the criterion of admissibility, the law of *Westminster-Hall*, by eminent law writers, is considered as being settled. 1 *Phill. Evid.* 42. 2 *Stark. Evid.* 746, 7.

In *Gilpin*, q. t. v. *Vincent*, 9 *Johns. Rep.* 219. it was recognized as a rule, by the supreme court of the state of *New-York*, that an honourary obligation does not go to the competency of a witness.

It was supposed by the counsel, who argued the case before us, that in *Skillinger* v. *Bolt*, 1 *Conn. Rep.* 149. this Court determined differently. That the facts of the case laid a sufficient foundation for the opinion supposed, if such had been the judgment of the court, is, at least, doubtful; but no such determination was made. A person, who had an unquestionable interest in the event of the suit, was offered, by the defendant, to testify; and was rejected. In consequence of this, he was released; and being interrogated, declared, that he expected to pay the judgment and all expenses, if there should be a recovery against the defendant. He was rejected on the ground distinctly expressed, that the release "was a *sham business*, made up for the occasion; and that it never was intended, by the parties to the discharge, that it should exonerate the witness." The determination, then, proceeded, not on the ground of honourary, but of actual obligation to indemnify, arising from the secret understanding of the parties. Of this opinion were the late Judges of this Court, whose decisions have been cited, and merit high respect.

It was insisted on, in the argument, that a person who *believes* himself to be interested in the event of a suit, although he is not interested, is incompetent as a witness; and that, on a

principle of analogy, one who is under an honourary obligation to indemnify the party, for whom he is called to testify, is equally so.   I admit neither the principle, nor the analogy.

Undoubtedly, there are, in *England*, several *dicta* in favour of the principle advanced.   1 *Phill. Evid.* 43.   In *Virginia*, *Kentucky*, *New-York* and *Massachusetts*, it appears to be established doctrine.   *Richardson's* exr. v. *Hunt*, 2 *Munf.* 148.   *Sentney* & al. v. *Overton* & al. 4 *Bibb*, 445.   *Lansingburgh* v. *Willard*, 8 *Johns. Rep.* 428.   *Plumb* v. *Whiting*, 4 *Mass. Rep.* 518. In *Vermont* and *Pennsylvania*, the opposite doctrine has been recognised.   *State* v. *Clark*, 2 *Tyler* 278.   *Long* v. *Baillie*, 4 *Serg. & Rawle*, 226.   *Henry* v. *Morgan*, 2 *Binn.* 497.   The principle, however, when analysed, is the exploded one of *bias;* for the case expressly admits, that there is no interest in the event, but merely in the fancy of the proffered witness.   That a supposed interest, which is merely ideal, may occasion as strong a bias as actual interest, I am not disposed to deny.   In the former part of these remarks, I put several cases of powerful bias, in which witnesses have been admitted; and on any principle that would repel the person who has no interest, but a misconception of one, I should be of the opinion, that in the cases adjudged, there was a misdetermination.   But these decisions are unquestioned, and are recognised as established law.

I do not cite *Starkie* as an authority; but I feel myself much strengthened on this point, by the concurrent opinion of so learned and able a jurist.   2 *Stark. Evid.* 747.

As to the analogy between the doctrine just discussed and that of an honourary obligation to indemnify, there is none, unless the *bias*, which exists in both instances, in defiance of the established principle resting incompetency on an interest in the event, renders a witness inadmissible.   For this no one will contend.   The degree of bias, in the cases alluded to, is very different.   In respect of a supposed interest in the event, there is a definite standard, by which its force may be estimated; while the impulse of mind arising from honourary obligation, on the principles of evidence, renders a witness incompetent.

The reasons for confining the incompetency of a witness to an interest in the event of the suit, are strong and convincing. The ends of justice are most effectually attained, by a full and complete investigation of the subject in dispute; and hence

*Litchfield,*
June,
1827.

Smith
*v.*
Downs.

the courts, of late years, have endeavoured, as far as possible, to let the objection go to the credit, rather than to the competency, of the witness. *Rex* v. *Bray, Rep. temp. Hardw.* 360. *Walton* v. *Shelley,* 1 *Term Rep.* 300. Besides, as was justly remarked, in *Phelps* v. *Winchel,* 1 *Day* 269. bias without interest is "too uncertain for practice, and too limited for the investigation of truth." Confining incompetency strictly to an interest in the event, while it enlarges the right of the party, and gives him the testimony which his case may necessarily demand, prevents his being deprived of it under the pretence of a fancied obligation. The interest of the witness, in general, if he have any, is releasable; and the test of admission is plain, certain and simple.

But if an honourary obligation constitutes a legal incompetency, as was justly said in the argument, the old doctrine of bias is set up, in its strongest form; a reluctant witness may deprive a party, absolutely, of indispensable evidence, by a pretence; and the exclusion of the witness is effected, not by reference to any certain criterion, but by a principle indefineable in its operation, and often fanciful and imaginary.

There are many cases, and this is one of them, in which the jury are called on, to weigh the credibility of the witness. If this resource is not as perfect as one could wish, it is no inconsiderable security; and at least, if there exists an evil, it must be submitted to, as it attends the rule of evidence suspending incompetency on an interest in the event, the best that has hitherto been devised.

The other Judges were of the same opinion, except BRAIN-ARD, J. who was absent.

Judgment reversed.