## WARREN *vs.* HAIGHT & LUSK.

When it appears, upon a trial, that a witness then examined has sworn differently upon the same point, on a former occasion, he is not to be pronounced by the judge to be incompetent and his testimony excluded from consideration by the jury; but his testimony should be submitted to the jury, to be considered by them, in connection with the other evidence, under proper instructions.

The decision to the contrary in *Dunlop* v. *Patterson*, (5 *Cowen*, 243,) questioned, and declared to be at best, ambiguous; and, although qualified by *The People* v. *Evans*, (40 *N. Y.* 5, 6,) the authority of the latter case *held* to have been entirely destroyed by the case of *Dunn* v. *The People*, (29 *N. ·Y.* 526, 528.)

It is a rule that a witness is competent until a judgment for felony is introduced against him; and that the question of credibility is entirely for the jury, under proper instructions from the court. *Per* POTTER, J.

If testimony apparently contradictory can be reconciled; if by any proper view, it can all be made consistent, this it is the duty of courts, as well as juries, to attempt. Its weight is never a question of law, for a court, except in cases where it cannot be so reconciled and explained.

THIS action was brought upon a promissory note, to recover the amount due thereon. The note was originally given to one William E. Warner, and the plaintiff claimed to be the owner and holder of it.

The answer, among other things, put in issue the ownership of the note, alleging that it was owned by one Newton. Upon this issue the defendants had the affirmative. The evidence was as follows:

The defendants gave in evidence a written assignment

of this note by William E. Warner, the payee, to Newton, dated April 5, 1870. They then called Warner, who swore that prior to January, 1870, he had left the note with his daughter; that he had never "transferred the note to the plaintiff, nor consented that he might have it." The defendants then called Warner's daughter, who said that the plaintiff, who is an attorney, called upon her while her father was in jail, charged with felony; that he told her her father "would have to go up; and that he wanted him to come up and get the notes and papers, all that could be turned into money for us." That the plaintiff said he was in a hurry to get them before there was an injunction served on them; that he wanted to get the notes to turn them into money for "us," (the witness and her sister.) That he would put the money in the bank in his own name, and that when the witness and her sister wanted any money, he would send it to them. Upon this, her sister gave the plaintiff this note and took his receipt for it. That receipt was put in evidence, and was dated January 21, 1870. On the other hand, the plaintiff swore that this note was, with others, transferred by Warner to himself and one Miner for professional services, and that he obtained them of Warner's daughter by Warner's directon. He denied the declarations testified to by Warner's daughter, and further testified that Miner had transferred to him his share of the note. Miner was then sworn, and testified to the same facts. The plaintiff then read in evidence a portion of Warner's answer in a suit brought by Newton against Warner, these defendants and others, for the recovery of several notes. The answer set forth that Warner had held "some obligations" against some of the defendants in that action, but that "he does not now hold or own the same, and has not since this action was commenced." This answer was sworn to on the 8th day of February, 1870, and the action referred to was begun on the 21st day of January, 1870. Miner

then testified that the note in suit was one of the notes referred to in Warner's answer. Warner swore that he verified the answer without reading it.

Upon this evidence the court directed a verdict in favor of the plaintiff, for the amount due upon the note, and denied the defendants' request to submit the question to the jury.

*M. M. Waters*, for the appellants.

*Wm. H. Warren*, respondent, in person.

*By the Court,* P. POTTER, J. The respondent contends that Warner having sworn falsely upon a question material to the issue, his testimony must be disregarded; and there being no other testimony for the defendants, the court was correct in taking the case from the jury. I cannot concur in the soundness of this argument, either as to the truth of its premises, or the justness of its conclusions.

The case of *Dunlop* v. *Patterson,* (5 *Cowen,* 243,) is at best ambiguous. It does not clearly appear from the opinion whether the judgment was reversed because the evidence of the perjured witness should have been *entirely* disregarded, or because the court had not properly instructed the jury in regard to the weight which they should give to it. It is qualified by *The People* v. *Evans,* (40 *N. Y.* 5, 6.) And the authority of the latter case has, to my mind, been entirely destroyed by the case of *Dunn* v. *The People* (29 *N. Y.* 526, 528.) It is true, in the opinion of INGRAHAM, J., a distinction is made between a case where the false swearing was upon matter material to the issue, and where it was otherwise, but no such distinction is recognized by the chief justice.

It is a rule, that a witness is competent until a judgment for felony is introduced against him; and that the question of credibility is entirely for the jury, under proper instruc-

tions from the court. But I am further of the opinion that the false swearing was not proved. The identity of the note in suit with either of the notes referred to in Warner's answer was proved only by Miner's testimony. It is simply oath against oath. And the statements are not necessarily contradictory, even if the notes are the same. In the answer, Warner swears that " he does not *now* hold or own the notes, and has not, *since this action was commenced.*" In this action he swears that he never transferred it to the plaintiff. Both these statements may be true. If in the latter he meant a *written* transfer, that was true. And it must be borne in mind that his answer was prepared by his counsel, Miner, through whom the plaintiff claims title. And Warner swears he did not take it in his hand; and can't tell whether it is his answer or not; that Miner read a paper to him in the jail; he signed it and swore to it; that he don't remember that he stated that he did not own this note. He did not read the answer himself, and was not aware that the ownership of the note was denied. That he signed it without knowing that fact.

I am further of the opinion that there was evidence for the defendants, besides Warner's. The plaintiff's declarations, sworn to by Warner's daughter, tend to show that Warner received the note, not by a transfer to himself or Miner, but to collect for Warner's family. An inference could be legitimately drawn, from this evidence, that Warren received the note by virtue of an authority from Warner, which Warner could revoke by an assignment to Mrs. Newton.

Upon the whole case, it is my opinion that a verdict for the defendant would have been sustained, as warranted by the evidence.

It is a safer rule, in such cases, for the judge carefully to instruct the jury as to the weight to be given to evidence; to call their attention to the circumstances under which apparently contradictory evidence was given; to the influ-

Warren *v.* Haight.

ences under which such statements were obtained or made; if made in writing, whether deliberately written by the witness himself, or whether prepared by another, whose interest it was to have the statement in a particular form; whether the statement was read and fully understood by the witness; or whether it was signed in the full confidence that it was right, upon the statement of another. All these circumstances, it seems to me, were involved in this case; and as it is the especial province of a jury to weigh and consider them, I am of opinion that the learned judge ought to have submitted all these circumstances and considerations to the jury, whose united judgment is the safest reliance.

If testimony apparently contradictory can be reconciled; if by any proper view, it can all be made consistent, this it is the duty of courts, as well as juries, to attempt. Its weight is never a question of law, for a court, except in cases where it cannot be so reconciled and explained. Such, it seems to me, was not this case. While there may be strong suspicions of want of integrity in the evidence, I do not think it was all on one side.

The result is, I think, that the judgment should be reversed, and a new trial granted, costs to abide the event.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, May 7, 1872. *Mil-lin*, P. J., and *P. Potter* and *Balcom*, Justices.]